IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

April 18, 2006 Session

## CHINON DEVELOPMENTS, LLC v. FARNSWORTH OFFICE PRODUCTS, LLC, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. 99-0776-2    Arnold B. Goldin, Chancellor**

—————————————

**No. W2005-01821-COA-R3-CV - Filed June 30, 2006**

—————————————

This is an action for breach of contract to pay commissions for arranging a lease on commercial property.  The brokerage firm insisted that Pam-Am, the tenant, maliciously induced the Landlord, not to pay additional commission.  The Chancellor disagreed.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SP. J., delivered the opinion of the court, in which ALAN E. HIGHERS and DAVID R. FARMER, J.J., joined.

Scott J. Crosby, Memphis, Tennessee, attorney for Appellant, Chinon Developments, LLC.

Robert F. Miller and Nicole Gibson Davison, Memphis Tennessee, attorney for Appellee, Pan Am International Flight Academy, Inc.

James R. Newsom III, Memphis, Tennessee, attorney for Appellees, Farmsworth Office Properties, LLC and Farnsworth Investment Company.

## OPINION

The Pleadings

This is an action for damages founded upon two (2) contracts:  a Commission Agreement, and a written Lease, with amendments.

In June 1998, Farmsworth Investment Company [hereinafter "FIC"] as Landlord, and Plaintiff, Chinon Developments LLC [[hereinafter "Chinon"], entered into a Commission Agreement which, as relevant, provided that if a Lease is consummated between the Landlord and Pan Am International Flight Academy [hereinafter "Pan Am"], a brokerage commission will be paid by

Landlord to Chinon[1] based upon a schedule for commissions for lease transactions. The term "Landlord" is defined to include any subsidiaries, successors, assigns, and nominees. The Commission Agreement provided that the commission rate is "four percent of the aggregate rental for the entire lease term," and that one-half of the commission for the initial term of the lease payable at the time of the execution and delivery of the lease, with the remaining one-half of the commission shall be payable upon the commencement of the lease or occupancy of the premises by the tenant, which first occurs.

A Lease was entered into on October 12, 1998, between Farnsworth Office Properties LLC [hereinafter "FOP"] as Landlord, and Pan Am as tenant. This Lease was amended and re-stated on February 11, 1999. The space to be leased was expanded which, concomittantly, increased the rate. There was a third amendment to re-lease involving tenant-specific items which required Pan Am to pay increased rent during year six through year fifteen, subject to a cap. Chinon did not participate in these negotiations. Property owned by FOP in the T & B Boulevard in Shelby County was the subject of the Lease as amended and re-stated. The Lease provided, as relevant, that the Landlord will pay a commission to Chinon pursuant to the Commission Agreement.

In June 1999, before the Lease term commenced or the tenant occupied the premises, FOP and Pan Am executed an amendment to the Lease by defining its initial term as fifteen years from the date of the commencement of the Lease.

Chinon alleged that it invoiced FOP for the amounts owed as its commission and that the "defendants have thus breached the Commission Agreement and the Lease." Chinon further alleged that Thomas C. Farnsworth III, an officer of FIC and a member of FOP, informed it by letter dated July 16, 1999, that Pan Am refused to pay Farnsworth for the aggregate gross rental.

Chinon sued FOP and Pan Am to recover the brokerage commissions, alleging breach of contract and inducement to breach. Chinon alleged that Pan Am was aware of the brokerage Agreement and "intended to induce FIC and FOP to breach the Agreement, acted maliciously in doing so, and should respond in damages, actual and punitive.

FOP and FIC filed a joint answer asserting that FIC is not a separate entity but merely a trade name of FOP, and denied that Chinon "has any rights under said lease agreement." Defendant FOP averred that it has paid Chinon $139,153.00, which represents one-half of the claimed commissions, and that it stands ready to pay the remaining one-half at the proper time, which was tendered to Chinon. It averred that Chinon was not entitled to additional commissions as a result of the amendments to the Lease because Chinon was not involved in the negotiation of the amendments or the extension of the Lease, citing paragraph 4 of the Commission Agreement which provides:

> If a lease is renewed or extended, whether pursuant to any option or right contained in the lease or otherwise, Landlord shall pay

---

[1] A licensed real estate broker.

additional commission to Chinon *provided that Chinon is actively involved in the negotiations of such renewals or extentions.* The amount for such renewal or extension shall be two percent (2%) of the aggregate rental of the entire renewal or extension. [Emphasis added].

The Defendant Landlord, inter alia, sought to quiet its title to the leased property by seeking a discharge of the *lis pendens*, and its attorney fees.

Defendant Pan-Am answered the complaint, generally averring that the Commission Agreement and the Lease speak for themselves; that it is in the process of occupying the leased premises; that Chinon mischaracterized the contents of the letter referenced in its complaint, and that the letter speaks for itself. Pan-Am denied that Chinon provided any brokerage services regarding the leasing of the FOP property except initially, and denied that Chinon is a beneficiary of the Lease as it alleged.

## The Judgment

After "years of discovery," a bench trial resulted in a judgment, pursuant to findings that:

(1)     Chinon was not actively involved in the negotiations for the extension of the terms of the Lease for five years and thus was not entitled to the additional claimed commission for the eleven through fifteen years;

(2)     Chinon is entitled to a commission in the amount of $28,828.00 for the increase in rent for the years six through ten resulting from the First Amendment to the Lease, together with four percent (4%) pre-judgment interest from June 25, 1999 to the date of judgment and attorney fees and expenses of $44,098.15;

(3)     Chinon failed to prove its claim for procurement of breach of contract against Pan Am, because of the lack of proof that Pan Am acted with malice;

(4)     Attorney fees incurred by Chinon on the procurement of breach claim were not allowed;

(5)     Costs are assessed against FOP.

Chinon appeals and presents for review these issues:

-3-

(1)    Whether Pan Am procured the breach of the Commission Agreement by insisting that FOP not pay certain commissions to Chinon which had the indirect purpose of injuring Chinon and benefitting Pan-Am;

(2)    Whether Chinon is entitled to a commission for the entire initial term of the Lease when the initial term was re-defined from ten years to fifteen years before the Lease commenced.

Pan Am presents these issues for review:

(1)    Whether the court erred in holding that the increase in rent from years six through ten was not a part of the extension in the Third Lease so that Chinon would not be entitled to a commission on the increased rental payments;

(2)    Whether the court erred in awarding attorney fees of $44,098.00 to Chinon.

"FOP doing business as FIC" presents these issues for review:

(1)    Whether Chinon established that FOP breached the Commission Agreement because Chinon was only entitled to receive commissions for services rendered in negotiations in which it was actively involved;

(2)    Whether FOP is entitled to recover its attorney fees under the Commission Agreement as the prevailing party.

### Analysis

The standard of review is de novo on the record accompanied by the presumption that the judgment is correct unless the evidence otherwise preponderates. Tenn. R. App. P. 13(d). There is no presumption of correctness with respect to questions of law.

We first consider Chinon's argument that Pan Am procured a breach of the Commission Agreement by insisting that FOP not pay Chinon any additional commission for years six through ten of the Lease, citing Tennessee Code Annotated section 47-50-109 which declares it unlawful for any person to induce or procure the breach of any lawful contract by any party thereto.

There are several elements Chinon must prove, by clear and convincing evidence, that Pan Am procured the breach of the Commission Agreement. These elements include (1) the existence of a legal contract; (2) that Pan Am had knowledge of the contract; (3) that Pan Am intended to

induce its breach; (4) that Pan Am acted with malice; (5) that there was a breach of the contract; (6) that the act(s) of Pan Am were the proximate cause of the breach, and (7) that damages resulted. *See, Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343 (Tenn. Ct. App. 1999). Farnsworth, of FOP, testified on discovery that he believed Chinon was entitled to the additional commission [of $28,820.00] based upon the increased rent for years six through ten of the Lease. The Chancellor awarded this amount to Chinon, with interest and fees, for FOP's breach of the Commission Agreement. In light of Farnsworth's testimony, the question naturally occurs as to why FOP did not pay this additional commission. Chinon argues that Farnsworth testified that he would have paid the additional amount had not one Bob Grove, a Pan Am employee, urged him not to do so. This argument is apparently incorrect; it was not Grove who advised Farnsworth not to pay the additional commission, but rather, two other employees of Pan Am - Ladner and Harvey - who separately studied the Commission Agreement and concluded that Chinon was not entitled to the additional commission because it [through Mr. Speake, its official] had not actively participated in the negotiations.

The Chancellor was content to find only that Chinon failed to prove that Pan Am acted with malice, and thus cannot recover treble damages for the increase in rent for years six through ten. Proof of malice by clear and convincing evidence is required, and we agree with the Chancellor that malice is not shown.

Chinon next presents for review the issue of whether it is entitled to a commission for the entire term of the lease when the initial term was redefined from ten years to fifteen years before the lease commenced.[2]

As noted, the Chancellor found that Chinon was entitled to recover a commission in the amount of $28,826.00 for the increase in rent for the years six through ten resulting from the first amendment to the Lease, presumably owing to the provision in the Commission Agreement that specifically provides for a commission of "four (4%) percent of the aggregate rental for the entire lease term." The Lease was amended before it commenced, and the language "aggregate rental for the entire lease term" appears to be concise and readily understandable.

By the second amendment, Pan Am and FOP increased the rent for years six through ten, and extended the Lease from ten years to fifteen years. The sole purpose of the extension was to include $300,000.00 in tenant-specific (benefitting Pan Am) items described in the second amendment. Chinon concedes that it was not involved in the negotiations resulting in the second amendment; Pan Am argues that "an entitlement to an extension commission requires Chinon's active involvement." We agree.

---

[2] Chinon argues that "there is no dispute that FOP did not pay 4 percent of the full aggregate rental owed by Pan Am for the first ten years of the initial term," and "there is no dispute that the amount of commission unpaid for years six through ten of the lease is in the amount of $28,820.00." These assertions appear to be incorrect. Whether a commission is payable on the rent increase for years six through ten is an issue on appeal. The "years of discovery" involved a plethora of witnesses, and a great deal of "he said, I said" testimony, all giving rise to much convolution and advocacy.

The issues presented by Pan Am have heretofore been discussed except for the allowance of attorney fees to Chinon. The Chancellor found that the award of $44,098.15 for attorney fees was reasonable, and we find no abuse of discretion to award these fees. Pan Am recognized this standard in its brief.

The relevant issue presented by FOP is whether it is entitled to recover its attorney fees "as the prevailing party." The Lease so provides.

FOP was not the "prevailing party' and, contractually, is not entitled to recover its attorney fees.

We cannot find that the evidence preponderates against the judgment, or that the Chancellor erred as a matter of law on any issue. The judgment is accordingly affirmed at the cost of the Appellant and its surety.

_____
WILLIAM H. INMAN, SPECIAL JUDGE